# 315 Arch Street Condominium Association v. 315 Arch Street Realty, 2005 L.P.

*William G. Roark* and *Robert E. Slota, Jr.,* for

226

plaintiff.

*Thomas J. Gregory*, for defendant.

GLAZER, *J.*, April 1, 2014—

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Plaintiff 315 Arch Street Condo Association (the "Association") is an association of the owners of condominium units at 315 Arch Street, Philadelphia (the "Condominium"). The Condominium has approximately 53 units, including a commercial unit on the ground floor.

2. Defendant 315 Arch Street Realty 2005, L.P. (the "Developer) was the developer of the Condominium and the declarant that issued the Declaration of Condominium (the "Declaration") for the Condominium.[1]

3. In 2006, the Developer controlled the Condominium board and hired its manager and billing consultant. Once enough units in the Condominium were sold to persons not associated with the Developer, the Board began to act independently of the Developer.[2]

4. The Developer continues to own, and rents out, residential Units 206, 504, 603, 703 and 704 and the commercial Unit 101.

5. In March, 2011, the Association notified the unit owners, including the Developer, that there were leaks in the exterior wall of the Condominium and extensive masonry work had to be undertaken to solve the problem.[3]

---

1. Trial Exhibit (hereinafter "Ex.") A, § 1.1.
2. *See* Pa C.S. §3303.
3. Ex. C; November 4, 2013 Trial Transcript (hereinafter "Tr.") pp. 26-27.

6. The exterior of the Condominium is a "Common Element" and all unit owners must contribute to its repair and upkeep, in the form of a special assessment, in proportion to their shares, as set forth in the Declaration.[4]

7. In 2011, the Condominium Board approved a special assessment for exterior repair in the amount of $205,000.[5] The repairs were made and the Association paid the bills in that amount.[6]

8. In the Spring of 2012, the Association billed the unit owners for their proportional share of the special assessment for the exterior repair costs.[7]

9. The Association billed the Developer $2,392.92 as the special assessment for Unit 206, but the Developer failed to pay that special assessment.[8]

10. The Association billed the Developer $1,549.72 as the special assessment for Unit 504, but the Developer failed to pay that special assessment.[9]

11. The Association billed the Developer $1,662.57 as the special assessment for Unit 603, but the Developer failed to pay that special assessment.[10]

12. The Association billed the Developer $1,373.56 as the special assessment for Unit 703, but the Developer failed to pay that special assessment.[11]

---

4. Ex. A, §4.1, §5.1 and Exhibit B thereto; Tr. p. 26. *See* 68 Pa. C.S. § 3314(b).
5. Ex. E.
6. Tr. pp. 29-32, 34.
7. Tr. p. 34.
8. Ex. B; Tr. p. 35
9. *Id.*
10. *Id.*
11. *Id.*

13. The Association billed the Developer $2,046.78 as the special assessment for Unit 704, but the Developer failed to pay that special assessment.[12]

14. Under the provisions of the Declaration, the charges for electric and water utilities may be sub-metered for each unit and billed directly to each unit.[13] Pursuant to this scheme, the Association pays the utility companies for the Condominium's entire usage and then the individual unit owners are supposed to reimburse the Association for each unit's usage.[14]

15. When the Developer hired the billing consultant for the Condominium, the Developer had it bill the Developer's tenants for utilities rather than the Developer itself.[15] Some of those bills were not paid.

16. Once the Association took over from the Developer and discovered the Developer was not being billed directly, the Association directed the billing consultant to bill the Developer directly for its units' usage.[16] The Developer has not paid all of those bills.

17. The Developer failed to pay $7,138.07 billed for electricity and $3,381.25 billed for water with respect to Unit 206.[17]

18. The Developer failed to pay $8,601.88 billed for electricity and $1,655.69 for water with respect to billed

---

12. *Id.*
13. Ex. A, § 13.19.
14. Tr. pp. 36-37. *See* 68 Pa. C.S. § 3314(c)(3).
15. Tr. pp. 37-38.
16. *Id.*
17. Tr. p. 42; Exs. B, G, H, I.

Unit 504.[18]

19. The Developer failed to pay $2,014.51 billed for electricity and $49.10 billed for water with respect to Unit 603.[19]

20. The Developer failed to pay $2,825.15 billed for electricity with respect to Unit 703.[20]

21. The Developer failed to pay $2,648.74 billed for electricity and $909.20 billed for water with respect to Unit 704.[21]

22. The commercial unit, Unit 101, which is owned by the Developer, has a heating unit that utilizes a large brick chimney that runs up the exterior of the Condominium Building.[22]

23. Unit 101 is the only unit that utilizes the chimney, so the chimney is a limited common element appurtenant to Unit 101.[23] As such, Unit 101 is the only unit responsible under the Declaration for paying to repair the chimney.[24]

24. The Association hired a structural engineer to assess the chimney.

25. His inspection revealed straps in place holding the chimney together, straps holding the chimney to the building, numerous vertical cracks running along the chimney, and places where the chimney was pulling away

---

18. Tr. pp. 42-44; Exs. B, H, I, J.
19. Tr. pp. 45-46; Exs. B, H, I, K.
20. Tr. pp. 47-48; Exs. B, H, I, L.
21. Tr. pp. 48-49; Exs. B, H, I, M.
22. Tr. pp. 23-24.
23. Tr. p. 50; Ex. A, §3.2.2.
24. Ex. A, § 3.3; Ex. N. *See* 68 Pa. C.S. §3314(c).

from the building.[25]

26. In his professional opinion, which the court found to be credible, the chimney needs to be repaired urgently or removed.[26]

27. The cost to remove the top portion of the chimney and stabilize the remainder is estimated to be $41,578.00.[27]

28. The Association has not yet completed this work because it lacks the necessary funds to do so.[28]

29. Pursuant to the Declaration, the Association may recover from a unit owner the attorneys' fees incurred by the Association in collecting delinquent assessments.[29]

30. The Association incurred attorneys' fees in the amount of $28,653.08 in prosecuting these consolidated actions.[30]

31. The Developer as owner of Units 206, 504, 603, 703 and 704 must pay the Association $9,025.55 for those units' portion of the special assessment for exterior repairs.

32. The Developer as owner of Units 206, 504, 603, 703 and 704 must pay the Association $29,223.59 for electricity and water consumption by those units.

33. The Developer as owner of commercial Unit 101 must pay $41,578.00 to the Association to cover the cost of removing and repairing the chimney, which is a limited common element appurtenant to Unit 101.

25. Ex. P; Tr. pp. 83-86.
26. Ex. P; Tr. pp. 87-89, 95-97.
27. Ex. Q; Tr. p. 102.
28. Tr. p. 51.
29. Ex. A. §13.12, §13.17. See 68 Pa. C.S. §3315(a).
30. Tr. pp. 110-112; Exs. R, S.

34. The Developer must pay the Association's attorneys' fees of $28,653.08 incurred in these consolidated actions.

## CONCLUSION

Based upon the foregoing, judgment shall be entered against defendant and in favor of plaintiff in the amount of $108,480.22.

## ORDER

And now, this 1st day of April, 2014, after a non-jury trial of these consolidated matters, and in accord with the findings of fact and conclusions of law issued simultaneously, it is ordered and decreed that judgment is entered in favor of plaintiff and against defendant on plaintiff's claims in the amount of $108,480.22.